## Morgan v. Bennett and Grant.

(Decided December 13, 1918.)

### Appeal from Adair Circuit Court.

1. Appeal and Error—Question for Jury.—Where the evidence is conflicting the question is for the jury, and the verdict of a properly instructed jury will not be disturbed upon appeal unless it be flagrantly and palpably against the weight of the evidence.

2. Appeal and Error—Limiting Recovery on Counterclaim.—It was not prejudicial error for the court, in its instructions to the jury on a counterclaim, to limit the recovery of the defendant thereon to $512 even though his pleadings sought a greater sum, the jury having returned a verdict for only one hundred dollars.

L. C. WINFREY and A. W. HUDDLESTON for appellant.

JONES & GARNETT for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

Appellees, Bennett and Grant, were dealing in hogs and had on hands about eighty head in February, 1916, when they sold to appellant Morgan fifty-six of the number, at six and one-half cents per pound, which amounted to $325.00, and Morgan gave to Grant a check for said amount on the bank of Cumberland, and payment being refused this action was instituted in the Adair circuit court to recover upon the check. The petition alleges that Bennett and Grant sold to Morgan fifty-six hogs for which he agreed to pay $325.00, and issued his check for that amount on the bank of Cumberland, and thereafter notified the bank not to pay the check when presented, and said bank, in pursuance to said instruction, did refuse and fail to pay the check, and as a consequence no part of the purchase price of the hogs has been paid. The answer admits the purchase of the hogs, and the issual of the check by Morgan and that Morgan instructed

the bank not to pay the same, and payment was thereafter refused by the bank. In a counterclaim the defendant Morgan averred that Bennett and Grant sold and agreed to deliver to him sound, healthy hogs, free from disease and piggy sows, and that on February 8, 1916, the plaintiff delivered to the defendant fifty-six hogs on that contract, a part of which number were sick and diseased of cholera, thumps and other fatal diseases, and as a consequence twenty-two of the hogs died; that the plaintiff knew of the diseased condition of the hogs at the time they sold and delivered them to the defendant Morgan, as well as that certain of the sows were piggy; that the disease spread and infected other hogs on the farm of Morgan, and two of such hogs died from said disease; that defendant Morgan employed a veterinarian to vaccinate the hogs and otherwise treat them at an expense of $17.00, and that this was necessary in order to preserve the herd; that on account of the diseased condition of the hogs, defendant could only sell them in the market for a less price than he paid for them, and thereby lost $46.88 on this item; and this sum, added to the veterinarian's fees, and the value of the twenty-four hogs which died, makes a total of $203.48. The counterclaim further alleges that the farm of defendant became infected with cholera germs, which is contagious, and that he had since been unable to engage in the hog business and use or employ his farm for raising and breeding hogs, and that his farm by reason thereof had been reduced $500.00 in value.

The allegations of the counterclaim were traversed, a jury was impaneled to try the issues, and the defendant Morgan, assuming the burden, introduced proof establishing the fact that twenty-two of the hogs which he purchased from Bennett and Grant died of cholera on his farm after they were delivered to him by Grant and after the check had been issued and delivered; that the hogs were delivered to him on Tuesday and the check was issued immediately to Grant in payment thereof, but that at the time of the issual of the check he had not had an opportunity to inspect the hogs or to learn of their diseased condition, but within a few minutes after the check was issued and delivered to Grant, and Grant had left the premises, Morgan discovered for the first time that certain of the hogs had the thumps and others appeared to be sick and would not eat; that he gave them

careful attention and called the veterinarian to treat the hogs and did treat the hogs, but that on the Sunday following a number of the hogs died and others died thereafter, until the dead totalled twenty-two; that these hogs, so lost, were reasonably worth from $120.00 to $140.00; that up to the time of the delivery of the hogs on his farm there was no cholera or other disease amongst his hogs: that he had on his farm a large number of other hogs, and was regularly engaged in buying and selling hogs, but that since the delivery of the hogs by Grant his farm had become so infected with the disease of cholera that other hogs have been dying at different times and that his farm was not suited to the breeding and raising of hogs on account of its infection by cholera, and that he was damaged in this respect at least $500.00. Defendant Morgan further introduced evidence of the prevalence of hog cholera in and around the farm of Grant from which these hogs were brought, and that a number of hogs had died on adjoining farms to that of plaintiff Grant, and that in bringing the hogs from the Grant farm to the farm of the defendant Morgan they were driven past the bodies of hogs that had died from cholera, and that these facts were known to Grant at the time and before the sale of the hogs in question to Morgan.

Plaintiff Grant and his witnesses testified that the hogs which were sold and delivered to Morgan were well and sound at the time of the sale and delivery; that Grant had a large number of other hogs on his farm at the time he sold the fifty-six to Morgan and since said time had purchased other hogs which were herded on said farm, and that no cholera or other disease had been among said hogs either before or since the sale to Morgan; that the sows in the bunch sold to Morgan were young and that he was unable to tell that any of them were piggy at the time of the delivery, and that he did not intend to deliver any piggy sows to Morgan. But Grant denied that he agreed to deliver to Morgan sound, healthy hogs, free from cholera or other disease and not piggy, but he admitted that the hogs were to be a good bunch of shoats.

After the case was submitted to the jury and the jury had deliberated for some time one of the jurors came into the court room and announced to the court that the jury could not agree upon a verdict unless they could require

each party to pay his own cost. The court called the attention of the attorneys on both sides to the statement of the juror, and the attorneys and parties agreed in open court that the jury might return a verdict requiring each party to pay his own cost, whereupon the jury returned the following verdict: "We, the jury, find for the defendant one hundred ($100.00) dollars damages upon his counterclaim, leaving $225.00 for plaintiffs, and each party pay his own costs." The grounds for new trial set forth in the motion embrace the following:

1. Irregularity in the proceedings of the plaintiffs by which the defendant was prevented from having a fair trial.

2. Misconduct of the jury and the plaintiffs and the attorneys for said plaintiffs in the conduct of the argument of the case to the jury.

3. Insignificant and small amount of damages appearing to have been given under the influence of passion or prejudice, and is contrary to law.

4. Error in the assessment in the amount of recovery, in making said amount of damages too small.

5. Because the verdict is contrary to the evidence and is contrary to the law.

6. Because the verdict of the jury is not sustained by the evidence and is contrary to the law.

7. Error of the court in instructing the jury as to the law in the case.

In appellant's brief is urged only one cause for reversal and that is, the verdict of the jury is flagrantly against the weight of the evidence. Practically all of appellant's brief is devoted to a discussion of the facts with a view of establishing the contention that the verdict is contrary to the great weight of the evidence. In conclusion the brief of appellant says, "I recognize the fact that where a motion and grounds for a new trial have been overruled, that this court is slow to reverse the judgment of the lower court, but I think where a court is shown that a great injustice has been done a litigant, either purposely or by mistake or in some way that we can not account for, that the court will see that it is the only way to right the wrong, and will grant relief, and do it." In support of this statement the case of Johnson v. Davenport, 3 J. J. Marshall, 391, is cited. That case holds that a verdict should not be set aside, except in case of clear and flagrant injustice when the

preponderance of evidence is so decisive that the mind rests with unwavering confidence upon it. The established rule of this court is, that a verdict of a properly instructed jury will not be disturbed unless clearly and palpably against the evidence. This has been held so frequently that it seems useless to cite authorities. A mere preponderance of the evidence is not sufficient to warrant this court in overturning a verdict of a jury. If there is evidence to sustain the verdict, though it be slight, this court will not invade the provinces of the jury and set aside a verdict arrived at under proper instructions from the court. As said in L. & I. R. Co. v. Roemmele, 157 Ky. 84, ''The fact that the evidence is conflicting, or that this court would have made a different finding on the facts, or that in its opinion the verdict is against the weight of the evidence, furnishes no cause for setting it aside; nothing short of its being clearly and palpably against the evidence will give the appellate court authority to disturb it on this ground.''

No complaint is made in the brief of appellant of the instructions given to the jury, and as the appellant did not except to but one of the instructions given by the court, he is in no position to complain of the other five instructions given even though such instructions were erroneous. Instruction number 4, to which appellant objected, limited the amount of recovery on the counterclaim to $512.00, and the objection and exception is as follows: ''To the giving of this instruction number 4, the defendant excepted to the maximum amount given the jury in limiting its findings.'' Instruction number 4 limited the amount of defendant's recovery on his counterclaim to $512.00, but as the jury gave him only $100.00 under this instruction he was not prejudiced by the failure of the court to fix the correct sum sought in the pleadings, which was greater than $512.00. Under our Code, provision 756, this court is not authorized to reverse or modify a judgment, except for an error to the prejudice of the substantial rights of the complaining party. The substantial rights of appellant were not invaded by the failure of the court to fix the correct amount in the instructions in view of the jury's verdict.

No prejudicial error appearing, the judgment is affirmed.