# Archer v. Hacker.

June 8, 1943.

Woodward, Dawson & Hobson for appellant.

William A. Earl for appellee.

OPINION OF THE COURT BY JUDGE REES—Affirming.

John E. Hacker and Sallie M. Hacker, his wife, signed a writing dated June 4, 1941, styled "Unified Sales and Purchasing Contract," in which they offered to pay $7,000 for a house and lot on the south side of Yale street in Louisville, Kentucky, and known as 1831 Yale drive. John E. Hacker made a deposit of $500 to be applied on the purchase price upon delivery of deed. The house was under construction but had been practically completed, though not ready for occupancy. The written offer contained these provisions relative to additional work to be done to make the house satisfactory to the purchasers:

"In addition to the regular equipment now furnished at 1831 Yale Dr. seller is to furnish attic into one room with closet, chair rail around kitchen wall; kitchen floor to be covered with red and black linoleum, kitchenette furniture to be placed in basement. Light plugs to be placed at ends of mantelpiece and the mirror over mantel to be placed in attic. All woodwork to be natural finish, walls of bath painted white, kitchen walls painted ivory. House to be heated with automatic gas furnace. Garage to be moved on back of lot in a straight line with

concrete ribbon driveway 18 inches wide and picture molding in bedrooms and dining room.''

The offer was accepted in writing by Edgar W. Archer, owner of the property. The sale was made through Puckett-Purcell Company, a real estate agency. A deed was never tendered to the Hackers, and on September 25, 1941, Archer conveyed the property to Henry Rollwage for a consideration of $6,600. On October 31, 1941, John E. Hacker brought this suit against Archer to recover the $500 he had deposited as part of the purchase price, and on the trial of the case the jury returned a verdict for the plaintiff. Appellant contends that he was entitled to a directed verdict in his favor, and the sole question presented for our decision is whether there was sufficient evidence to authorize submission of the case to the jury.

In instruction No. 1 the court told the jury if they believed from the evidence that after the execution of the contract Hacker notified Archer that he would not comply with the contract and would not take the property then the law was for the defendant and they should so find. In instruction No. 2 the jury were told if they believed from the evidence that after the execution of the contract Hacker merely requested Archer to rescind the contract and refund the $500 but did not signify his intention of not complying with the contract if his request was not acceded to by Archer, and that Archer refused to rescind the contract and refund the $500 deposit, then it was the duty of Hacker to tender payment of the balance due on the contract within a reasonable time, and if they believed from the evidence that he did tender the balance due within a reasonable time they should find for the plaintiff, Hacker, otherwise they should find for the defendant, Archer.

In appellant's brief it is said the evidence is uncontradicted that appellee notified appellant he would not comply with the contract and would not take the property on Yale drive, and appellant therefore was entitled to a directed verdict in his favor. We do not so read the evidence. The preliminary negotiations were between appellee and his wife and Charles M. Gaisser, a real estate agent connected with the real estate firm of Puckett-Purcell Company. Appellee was a noncommissioned officer in the United States Army and was stationed at Ft. Knox, Kentucky. Gaisser made two trips

to Ft. Knox to see appellee and his wife, and on one occasion drove Mrs. Hacker around Louisville to inspect houses which were listed with his firm for sale. The Hackers decided to purchase the Archer property, and on June 4, 1941, signed the written offer. On the following day appellee met Gaisser on Main street in Louisville and gave him $500. Gaisser left saying he would take the money to Archer, and returned with a receipt which he delivered to appellee. Hacker testified that he told Gaisser he was busy at Ft. Knox and unable to get off, and Gaisser promised to keep in touch with him and notify him when the house was completed. He neither received any communication from nor saw Archer, Gaisser or any other representative of the real estate firm until he went to the firm's office in October, 1941, and tendered the remainder of the purchase price after he had learned through outside sources that the house had been completed. A few days after the contract was signed appellee's battalion was broken up and part of it ordered to Iceland and part to Bermuda. Mrs. Hacker testified that on June 14, 1941, she telephoned to Mr. Archer and Mr. Gaisser and asked them if the advance payment that had been made would be returned if her husband should be ordered to leave Ft. Knox for foreign service. Mr. Archer said a contract was a contract and they would have to take the house. Appellee was not ordered to leave Ft. Knox, and remained there throughout the summer and autumn. According to him and his wife they had no other communication from Mr. Archer or the real estate agent and were ready, able and willing to pay the balance of the purchase price and accept a deed when tendered. Archer's attorney testified that he wrote four letters to appellee notifying him that Mr. Archer was waiting for him to select the linoleum for the kitchen floor and asking him to make the selection as soon as possible so that the house might be completed. The first letter was written July 21, 1941, and addressed to Major John E. Hacker, Ft. Knox, Kentucky. It was not returned. The second letter dated July 31, 1941, was addressed to Major John E. Hacker, R. R. T-81-A, Ft. Knox, Kentucky. A copy of the July 31st letter was addressed to Major John E. Hacker, c/o Q. M. C. Motor Pool, Ft. Knox, Kentucky. Both letters were returned to the sender with many notations on the envelopes, including "Panama Dept." and "Trans. to Panama." On August 7, 1941, a fourth letter addressed Major John

E. Hacker, Rural Route, T-81-A, Ft. Knox, Kentucky, was mailed, and was returned to the sender with several notations on the envelope. Appellee testified that he did not receive any of the letters, and received no communication from Mr. Archer or the real estate agent although they knew his address and his telephone number. Appellant's attorney was informed that Mr. Hacker was a Major in the United States Army, and this error in the address, no doubt, brought about the confusion resulting in the nondelivery of the letters.

In appellant's brief a number of authorities are cited in support of the argument that appellee's statement to appellant that he would not take the property was a renunciation of the contract, and appellant was from that time free to resell the house and lot. However, the authorities are not applicable, since, if Mr. and Mrs. Hacker's testimony is true, they did not renounce the contract but merely asked if Mr. Hacker's money would be refunded in the event he left Ft. Knox under orders to report for foreign service. They accepted the negative answer and intended to pay the balance of the purchase price upon notice that the house was ready for occupancy and tender of a deed. The evidence was conflicting, and whether or not appellee had renounced the contract was an issue for the jury to determine. Appellant also argues that appellee failed to tender performance within a reasonable time, but, according to Mr. and Mrs. Hacker, they were to be notified of the completion of the house and this was never done. Both issues were properly submitted to the jury. Cahart Holding Company v. Mitchell, 261 Ky. 297, 87 S. W. (2d) 360; Thomson v. Coleman, 219 Ky. 524, 293 S. W. 1089; Johnston v. Benjamin, 219 Ky. 169, 292 S. W. 801.

Judgment affirmed.